986 F.2d 1430
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio MEDINA, Defendant-Appellant.
 No. 92-2068.
 United States Court of Appeals, Tenth Circuit.
 Feb. 18, 1993.
 
 Before LOGAN, JOHN P. MOORE and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Antonio Medina was convicted of conspiring to possess, and possession, with intent to distribute more than 100 kilograms of marijuana. He appeals, contending the evidence was insufficient to convict him and that he was deprived of the effective assistance of counsel. We affirm.
 
 
 2
 Defendant's statement of the case, which is rich with adjectival references demeaning the testimony of the government's witnesses and replete with hyperbole and surmise better left to jury summation than appellate argument, is nonetheless a sufficient description of the testimony to counter his own claim of insufficiency. Nevertheless, our independent review of the record has satisfied us that the evidence produced by the government, together with the inferences logically flowing from that evidence, when viewed in a light most favorable to the government is sufficient to satisfy a reasonable jury of the defendant's guilt beyond a reasonable doubt. United States v. Nicholson, --- F.2d ----, No. 92-3083, 1993 WL 538, at * 5 (10th Cir. Jan. 5, 1993).
 
 
 3
 On October 2, 1991, defendant was observed driving a BMW auto into the Las Cruces International Airport where he waited approximately three hours for the arrival of a Cessna aircraft. When it landed, defendant drove to the plane and was given four empty suitcases by one of the two occupants. Defendant and Mr. Buzzanca, the plane's passenger, placed those suitcases in the trunk of the BMW. After settling accounts with the airport, the three drove to El Paso, Texas.
 
 
 4
 A customs service agent, who was called to the airport by a suspicious employee, examined the plane with the assistance of a border patrol drug-sniffing dog. The dog alerted to the aircraft, and the plane was placed under surveillance by the agent. The agent, who had been given the license number of the BMW by the suspicious employee, also determined the car was registered to John P. Smith.
 
 
 5
 Approximately two and a half days later, the surveilling officers observed a van enter the premises and park next to the aircraft they were watching. Two men removed from the car and loaded into the plane bags similar to the ones placed into the BMW by defendant and Mr. Buzzanca. Agents approached the two men and searched the bags after the drug sniffer alerted to them. Discovering approximately 303 pounds of marijuana in the bags, officers arrested the two men, codefendants Messig and Buzzanca.
 
 
 6
 Defendant was later seen to enter the van and start its motor. He was then arrested and searched. Found in his possession was a set of keys, including one to a BMW.
 
 
 7
 Defendant Smith was arrested about the same time driving a BMW in the vicinity of the airport. The BMW key found in defendant's possession opened the trunk of Mr. Smith's car.
 
 
 8
 At trial, evidence established the Cessna had been purchased by Mr. Smith with $25,000 furnished by Mr. Buzzanca. At Mr. Smith's request, Mr. Buzzanca solicited Mr. Messig to fly the plane to transport marijuana from New Mexico to California.
 
 
 9
 When Mr. Messig agreed, the two men decided to fly a trial run to Las Cruces to see if they could carry out the task. When they arrived at Las Cruces, they were met by defendant who then drove them to El Paso. Determining the trip could be accomplished, Messig and Buzzanca returned to California.
 
 
 10
 Mr. Messig and Mr. Buzzanca then returned to Las Cruces on October 2, 1991, where they were again picked up by defendant. While they were en route to their destination, defendant made a call on a cellular telephone. During this conversation, defendant told the person at the other end of the line that Messig and Buzzanca had not brought enough bags, but he would get more.
 
 
 11
 After dropping his passengers at their hotel, defendant left only to return fifteen to twenty minutes later with four new suitcases purchased from a nearby store. He told the two men either he or Mr. Smith would be getting in touch with them, and he left.
 
 
 12
 The next day, after directing the two men to another hotel, defendant told Mr. Buzzanca to rent a van and drove him to the El Paso airport in the BMW to accomplish the task. When Mr. Buzzanca returned, he and defendant loaded all the still-empty suitcases into the van. Buzzanca left the keys on the seat of the van as instructed by Mr. Smith who had informed him the van would be picked up and returned with marijuana in the suitcases.
 
 
 13
 As promised by Mr. Smith, the van was removed and returned during the night. The next morning, Buzzanca and Messig drove the van to the airport where they were arrested.
 
 
 14
 Defendant's attack upon this evidence is that it merely showed he was acquainted with Smith and had provided transportation for Buzzanca and Messig. Moreover, neither of them told defendant about his association with Smith. Indeed, he argues, his only act was to load and unload suitcases, an activtity clearly consistent with innocence.
 
 
 15
 Our view of the evidence is more expansive. We think it establishes defendant both possessed marijuana and played a knowing and active role in a conspiracy to possess and transport marijuana for the purpose of distribution. Defendant's attempts in this appeal to impeach the veracity of his codefendants might have been addressed to the jury, for it is the function of the fact finder to judge the credibility of witnesses. Our function is to determine whether the evidence is present, not whether it is believable. On that score, we are satisfied the government met its burden of proof.
 
 
 16
 Despite our holding in Beaulieu v. United States, 930 F.2d 805 (10th Cir.1991), defendant's second contention is that he was deprived of the effective assistance of counsel. Defendant makes no attempt to show us why we should not apply Beaulieu's long standing rule that we will not consider the issue of the effective assistance of counsel on direct appeal; accordingly, we will do so.
 
 
 17
 The "facts"[1] presented by counsel in his brief relative to this question should be developed in the crucible of an evidentiary hearing. Only then can a court make the legal determination of whether defendant's right to counsel was preserved in this trial. The mandate shall issue forthwith.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Statements of fact relating to defendant's trial counsel are made in the brief, but there are no citations to the record where supporting evidence can be found. See Fed.R.App.P. 28(a)(4) & (e)